1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

JOSHUA BURGER,

Plaintiff,

v.

CLIFFORD GALEY and EXCEL
CONTRACTORS, INC.,

Defendants.

Case No. 2:12-cv-1634-APG-CWH

**ORDER DENYING MOTION FOR
SUMMARY JUDGMENT**

Defendants Clifford Galey and Excel Contractors, Inc. have moved for Partial Summary Judgment on Plaintiff's claims for loss of income, loss of future income, and diminished earning capacity. (Doc. #44.)  Because genuine issues of material fact surround Plaintiff's claims for damages, I hereby deny Defendants' motion.

**I.   BACKGROUND**

On November 2, 2010, plaintiff Joshua Burger was injured in a car accident caused by Galey. (Compl. (Doc. #1) at 3; Defs.' Mot. for Partial Summ. J. ("MPSJ"), Ex. F (Dkt. 44-6) at 1.)  At the time of the accident, Galey was acting in the scope of his employment for defendant Excel. (Doc. #1 at 3.)  Burger filed suit in state court alleging common law and statutory negligence by Defendants, and Defendants removed the case to this Court. Burger seeks damages for medical expenses, pain and suffering, past and future loss of income, and property damage sustained as a result of Defendants' alleged negligence.  Defendants concede liability, so the only issue for trial is the amount Burger may recover for damages. (Doc. #45 at 14.)

Burger worked for Cashman Equipment at the time of the accident.  (*Id*. at 45 ("Burger Dep." at 153:7–19).)  After the accident, Burger was unable to return to work at Cashman and was ultimately let go from his position in January 2011. (*Id.* at 153:7–19, 154:25–155:3.)

In April 2011, Burger began employment at Skanska, a mining and pit expansion business. (*Id.* at 61:14–62:3.)  His work at Skanska was less physically demanding than his work at Cashman. (Id. at 62:22–23, 64:21–25.)  In January 2012, Burger left Skanska and began working at Mercator Minerals in Kingman, Arizona, in a position that required him to lift heavy equipment. (*Id.* at 64:8–9, 67:3–68:10, 148:5–9.)  He received good reviews throughout his employment at Mercator Minerals. (*Id.* at 163:15–22.)

Burger left Mercator Minerals and returned to work at Cashman Equipment, where he currently works as a heavy equipment mechanic. (*Id.* at 9:21–10:5, 76:1–11.)  Burger's duties include lifting parts and equipment weighing in excess of 100 pounds, and he describes his current work for Cashman as more physically demanding than his work at Mercator Minerals. (*Id.* at 36:14–18, 148:12–21.)  Burger currently is able to meet the requirements of his job. (*Id.* at 163:2–8.)  He believes that his supervisors would provide a praiseworthy assessment of his job performance and that he could have his current job for as long as he so desires. (*Id.* at 76:12–15; 163:2–18.)

Burger contends that he is still suffering pain from the accident; he continues to work through his pain, but the pain is worsening. (*Id.* at 191:9–193:11, 195:23–196:3.) He has not disclosed his physical limitations to his supervisors because he needs to keep working. (*Id.* at 162:12–163:13, 182:4–6.)  He plans to undergo lumbar fusion surgery, but cannot currently do so for financial reasons. (*Id.* at 15:7–13, 16:24–17:12, 21:22–22:3.)  He also is concerned about losing his mobility at a young age. (*Id.* at 17:13-21.)

Burger retained two medical experts, who have opined about the injuries he sustained in the accident. (*See generally* Doc. #45 at Ex. 3 ("Cash Dep.") and Ex. 4 ("Selznick Dep.").)  Dr. Andrew Cash, one of Plaintiff's treating physicians, recommends that Burger undergo reconstructive fusion surgery at L3-4 to correct a disc desiccation in his lumbar spine. (Doc. #47-1.)  Dr. Cash testified at his deposition that Burger is holding off on surgery for as long as he can tolerate his pain. (Cash Dep. (Doc. #45, Ex. 3) at

1   13:4–7, 55:19–24.)  Based on prior experience, Dr. Cash anticipates Burger will undergo
2   surgery within three years due to worsening pain. (*Id.* at 58:1–9.)  Dr. Cash states that
3   Burger will be unable to perform his current job for a period of six months after a
4   successful surgery. (Doc. #47-1.)  Neither Dr. Cash nor any other treating physician has
5   placed Burger on a formal work restriction. (Cash Dep. at 16:12–25; Burger Dep. at
6   68:23–69:9, 150:4–151:12.)

7        Dr. Hugh Selznick, a non-treating orthopedic expert retained by Burger, agrees
8   there is an objective orthopedic basis for Burger to undergo lumbar surgery. (Selznick
9   Dep. (Doc. #45, Ex. 4) at 49:10–13.)  Dr. Selznick testified at deposition that Burger
10  suffered a left shoulder separation. (*Id.* at 31:11-15.)  Dr. Selznick believes Burger will
11  suffer post-traumatic arthritis in his injured shoulder. (*Id.* at 32:10-23, 33:7-16.)
12  According to Dr. Selznick, Burger may have to undergo minor surgery on his shoulder to
13  remedy this problem. (*Id.* at 35:1–8.)  Dr. Selznick is aware that Burger is currently
14  holding off on lumbar surgery until he can no longer tolerate his pain, and states that this
15  is typical for spine fusion candidates. (*Id.* at 49:17–50:3.)  In contrast, Defendants'
16  medical expert, Dr. Derek Duke, does not believe Burger requires surgery to treat the
17  injuries he sustained in the accident. (IME of Dr. Duke (Doc. #44-6) at 7.)

18       Burger also retained two experts regarding possible future lost earnings. (*See*
19  *generally* Doc. #45 at Ex. 6 ("Kostelac Dep."); Doc. #45 at Ex. 7 ("Carroll Dep.").)  Jeni
20  Kostelac, a vocational rehabilitation expert, prepared a rehabilitation plan for Burger
21  based upon Dr. Cash's surgical recommendation. (Kostelac Dep. at 42:3–20.)  The plan
22  assumes Burger will have to change careers at some point in the future, whether or not he
23  has surgery. (*Id.* at 48:21–49:22.)  Kostelac has not reviewed any medical evidence that
24  would suggest that Burger would have to change careers if he did not have surgery. (*Id.* at
25  49:23–50:5.)

26       According to Kostelac, if Burger undergoes successful lumbar surgery and is able
27  to return to his job, Burger would incur six months' lost wages and six months' loss of

28

1   work life expectancy. (*Id.* at 79:1–5, 80:5–19.)  Kostelac believes Burger will have no

2   wage loss if he continues to be functional at work and is not placed under any restrictions

3   by his doctors. (*Id.* at 79:25–80:4.)  Kostelac further believes that if Burger changes

4   careers while under no restrictions from his doctors, she would not classify that as a wage

5   loss. (*Id.* at 60:18–25.)

6          Burger's economic expert, Dr. Thomas Carroll, estimated Burger's future earning

7   capacity under four possible scenarios: (1) Burger is not disabled and will be able to

8   function at his current level indefinitely; (2) Burger will be unable to function and will

9   require surgery, which will allow him to resume his career after a brief recuperation; (3)

10  the surgery is not successful and Burger must return to school, after which he will be able

11  to function as an able-bodied worker in a less stressful occupation; or (4) Burger's surgery

12  is not successful and he will remain permanently and partially disabled. (Doc. #44-5.)

13  Under the first scenario, Burger will have no future wage loss. (*Id.*)  Dr. Carroll agrees his

14  report is applicable only if the jury decides Burger is entitled to damages. (Carroll Dep. at

15  16:23–17:3.)

16  **II.     DISCUSSION**

17         Defendants move for partial summary judgment with respect to Burger's claims for

18  loss of income, loss of future income, and diminished earning capacity.  Defendants argue

19  that Burger has not met his burden of proving both the fact and the amount of future

20  damages with reasonable certainty.  Defendants contend that because Burger has not been

21  placed on any work restrictions by his doctors and has not been deemed disabled by a

22  doctor, his claims for future lost income and diminished earning capacity are speculative.

23  Defendants argue that both of Burger's economic experts improperly relied on the

24  speculative presumption that Burger will become disabled in the future.  Defendants

25  further note that Burger has held multiple physically demanding jobs since the accident,

26  he is not limited in his current job, he believes he would receive positive feedback at his

27  current job, he believes he could hold his current job for as long as he desires, and his

28

1  income actually increased in 2012.  Defendants conclude Burger therefore has not met his
2  burden of proving future wage loss with reasonable certainty.

3       Burger responds that disputes over the extent of his injuries, his future care, and his
4  future wage loss are matters for the jury.  Burger contends his medical experts
5  unequivocally recommend surgery on the basis of objective medical evidence, and his
6  injuries therefore are not speculative.  Burger thus contends he has offered substantial
7  evidence allowing a jury to find that he is entitled to future damages for lost wages or
8  diminished earning capacity.

9       Summary judgment is appropriate if the pleadings, the discovery and disclosure
10  materials, and any affidavits show that "there is no genuine dispute as to any
11  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
12  56(a), (c).  A fact is "material" if it might affect the outcome of a suit, as determined by
13  the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
14  An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could
15  find for the non-moving party. *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061
16  (9th Cir. 2002).

17       Initially, the moving party bears the burden of proving there is no genuine issue of
18  material fact. *Leisek v. Brightwood Com.*, 278 F.3d 895, 898 (9th Cir. 2002).  The moving
19  party may discharge its burden by "'showing' - that is, pointing out to the district
20  court - that there is an absence of evidence to support the nonmoving party's case."
21  *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (quoting
22  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *see also Nissan Fire & Marine Ins.*
23  *Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (stating that "the moving party
24  must either produce evidence negating an essential element of the nonmoving party's
25  claim or defense or show that the nonmoving party does not have enough evidence of an
26  essential element to carry its ultimate burden of persuasion at trial"). After the moving
27  party meets its burden, the burden shifts to the non-moving party to produce evidence that

28

5

1  a genuine issue of material fact remains for trial. *Leisek*, 278 F.3d at 898.  The Court

2  views all evidence in the light most favorable to the non-moving party. *Id.*

3  Future lost income and diminished earning capacity are economic damages in

4  Nevada. *See* Nev. Rev. Stat. § 41A.007; *Sierra Pac. Power Co. v. Anderson*, 358 P.2d

5  892, 895 (Nev. 1961).  The plaintiff bears the burden of proving both the fact and the

6  amount of damage. *See Yamaha Motor Co., U.S.A. v. Arnoult*, 955 P.2d 661, 671 (Nev.

7  1998) (upholding an award for future medical expenses where doctors testified about the

8  need for future medical treatment and the plaintiff presented evidence of likely future

9  medical costs).  However, so long as the plaintiff introduces evidence enabling a jury to

10  find the plaintiff was damaged, "some uncertainty as to the actual amount of damage is

11  allowed." *Mort Wallin of Lake Tahoe, Inc. v. Commercial Cabinet Co., Inc.*, 784 P.2d 954,

12  955 (Nev. 1989).  Thus, like any other category of damages, a jury may award damages

13  for prospective loss of wages or diminished earning capacity if the plaintiff introduces

14  evidence from which the jury can reasonably ascertain the losses. *See Beales v. Hillhaven,*

15  *Inc.*, 825 P.2d 212, 215–16 (Nev. 1992) (allowing damages for diminished earning

16  capacity where the plaintiff testified she had difficulty finding comparable work in the

17  area and an economic expert projected her future economic loss); *Sierra Pac. Power Co.*,

18  358 P.2d at 895 (allowing damages for diminished earning capacity where the plaintiff

19  and his employer testified he could no longer perform the work he was qualified to do and

20  the plaintiff's doctors testified as to the injuries he sustained). *Cf. Houston Exploration*

21  *Inc. v Meredith*, 728 P.2d 437, 439 (Nev. 1986) (a new business can recover prospective

22  lost profits "where evidence is adduced enabling a trier of fact to ascertain the extent of

23  the loss with reasonable certainty").  This evidence need not be conclusive; it is sufficient

24  to present evidence "upon which reasonable minds might disagree." *Sierra Pac. Power*

25  *Co.*, 358 P.2d at 895.

26  "[W]hen an injury or disability is subjective and not demonstrable to others (such

27  as headaches), expert medical testimony is necessary before a jury may award future

28

6

1    damages." *Krause Inc. v. Little*, 34 P.3d 566, 572 (Nev. 2001). Nevada law allows non-

2    medical expert witnesses to assist in determining damages. *Freeman v. Davidson*, 768

3    P.2d 885, 887 (Nev. 1989). "The credibility of witnesses and the weight to be given their

4    testimony is within the sole province of the trier of fact." *Quintero v. McDonald*, 14 P.3d

5    522, 524 (Nev. 2000).

6          Viewing the evidence in the light most favorable to Burger, there are genuine

7    disputes of material fact regarding Burger's future earning capacity. Burger has

8    introduced expert testimony from two medical doctors regarding the injury in his lumbar

9    spine and the need for surgery to correct this injury. This testimony would allow a

10   reasonable jury to find that Burger will require surgery. Burger's rehabilitation expert and

11   one of his doctors testified that he will not be able to handle heavy duty work for some

12   period of time after surgery, even if the surgery is successful. Burger currently works in a

13   job that requires him to handle heavy equipment. On this evidence, a reasonable jury

14   could find that Burger is entitled to damages because he will not be able to perform the

15   job he is qualified to do for some period after surgery. If the jury finds Burger is entitled

16   to damages for lost wages, Burger can introduce expert testimony as to the amount of

17   damages in several different scenarios, from which a reasonable jury could ascertain the

18   amount of damages. Burger thus has met his burden of presenting evidence

19   demonstrating genuine issues of material fact. It is up to the jury to decide whether he is

20   entitled to recover for loss of future earnings or diminished earning capacity, and in what

21   amounts.

22         Defendants emphasize that no doctor has definitively stated that Burger will have

23   to miss work or change careers after surgery. While medical testimony is necessary to

24   establish an injury or disability, Burger has met this requirement through the testimony of

25   Dr. Cash and Dr. Selznick. Dr. Cash testified that Burger will not be able to perform his

26   current job for six months after surgery. Kostelac, Burger's rehabilitation expert, opines

27   Burger will not be able to continue in his current job, regardless of surgery. Kostelac

28
                                            7

1  bases her opinion on prior experience and the reports of Burger's doctors. It is up to the

2  jury whether such testimony is believable. Burger has submitted sufficient evidence for a

3  reasonable jury to find he is entitled to damages for loss of future income or diminished

4  earning capacity. For these reasons, I deny Defendants' Motion for Partial Summary

5  Judgment.

6  **III.    CONCLUSION**

7       **IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Summary

8  Judgment (Doc. #44) is DENIED.

9       Dated: July 31, 2014.

11                                    ANDREW P. GORDON
                                      UNITED STATES DISTRICT JUDGE

8